## <u>INDEX OF DOCUMENTS FILEDWITH REMOVAL ACTION</u>

*John Stevenson vs. Austin-Travis County Integral Care Center, et al*

    (a)      Citation to Austin-Travis County Integral Care Center;

    (b)      Citation to Dr. Jeffrey Josephs (will supplement);

    (c)      Citation to the Housing Authority of the City of Austin;

    (d)      Citation to Sylvia Blanco;

    (e)      Plaintiffs' Original Petition;

    (f)      Docket Sheet (will supplement)

## LIST OF ATTORNEYS/PARTIES

*John Stevenson vs. Austin-Travis County Integral Care Center, et al*

1. **PLAINTIFF PRO SE:**
   John M. Stevenson
   P. O. Box 2452
   Austin, Texas  78768
   (512) 560-0233
   Legal.patches@yahoo.com

2. **DEFENDANTS' AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER ATTORNEYS:**
   William S. Helfand
   SBOT#: 09388250
   Barbara E. Roberts
   SBOT#: 06534230
   Chamberlain, Hrdlicka, White
   　　　Williams & Martin
   1200 Smith Street, Suite 1400
   Houston, Texas 77002
   (713) 654-9630
   (713) 658-2553 [fax]

3. **DEFENDANTS' THE HOUSING AUTHORITY OF THE CITY OF AUSTIN AND SYLVIA BLANCO ATTORNEYS:**
   Martha S. Dickie, Partner
   SBOT: 00000081
   Almanza, Blackburn & Dickie, LLP
   2301 S. Capital of Texas Hwy, Bldg. H
   Austin, Texas  78746
   (512) 474-9486
   (512) 478-7151 [fax]

# EXHIBIT A

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-10-001032**

JOHN M. STEVENSON

, Plaintiff

vs.

AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; DR. JEFFREY JOSEPHS, INDIVIDUALLY AND
AS AN EMPLOYEE OF THE AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; **PLEASE SEE    , Defendant
PETITION FOR ADDITIONAL PARTIES**

TO:  AUSTIN TRAVIS COUNTY INTEGRAL CARE CENTER
     BY SERVING ITS GENERAL COUNSEL, LISA OTT LAKY
     1430 COLLIER STREET
     AUSTIN, TEXAS 78704

DELIVERED THIS 5TH DAY OF APR, 2010
RICHARD McCAIN
CONSTABLE, PREC 3, TRAVIS COUNTY, TEXAS
BY                                314
              DEPUTY

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may
be taken against you.**

Attached is a copy of the ORIGINAL PETITION of the PLAINTIFF in the above styled and numbered
cause, which was filed on APRIL 1, 2010 in the 419TH JUDICIAL DISTRICT COURT of Travis County,
Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, April 02, 2010.

REQUESTED BY:                           AMALIA RODRIGUEZ-MENDOZA
JOHN M STEVENSON                        Travis County District Clerk
P.O. BOX 2452                           Travis County Courthouse
AUSTIN, TEXAS 78768                     1000 Guadalupe, P.O. Box 679003 (78767)
                                        Austin, Texas 78701

                                        By  Miriam Calderon
                                        MIRIAM CALDERON, Deputy

-- - -- -- - -- - -- - -- -- R E T U R N -- - - -- - - -- - - -- - --

Came to hand on the _____ day of _____, _____ at _____ o'clock ____ M., and executed at
_____ within the County of _____ on the
_____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in
person, a true copy of this citation together with the E-FILE MANDATE NOTICE accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Service Fee: $ _____

Sworn to and subscribed before me this the

_____ day of _____, _____.


_____
Notary Public, THE STATE OF TEXAS

_____
Sheriff / Constable / Authorized Person

By:_____

_____
Printed Name of Server

_____ County, Texas

D-1-GN-10-001032                    CONSTABLE                    D01 - 47275

🗇 Original    🗇 Service Copy

PAUPER'S OATH

# EXHIBIT B
**(Will supplement)**

# EXHIBIT C

C I T A T I O N

THE STATE OF TEXAS

**CAUSE NO. D-1-GN-10-001032**

4I5K

JOHN M. STEVENSON

 vs.                 , Plaintiff

AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; DR. JEFFREY JOSEPHS, INDIVIDUALLY AND
AS AN EMPLOYEE OF THE AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; **PLEASE SEE
PETITION FOR ADDITIONAL PARTIES**           , Defendant

TO: HOUSING AUTHORITY OF THE CITY OF AUSTIN
  BY SERVING ITS PRESIDENT AND CEO, MR. JAMES L. HARGROVE
  P.O. BOX 6159 (1124 SOUTH IH 35)
  AUSTIN, TEXAS 78762-6159

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED. You may employ an attorney. If you or your attorney do not file a written
answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may
be taken against you.**

Attached is a copy of the ORIGINAL PETITION of the PLAINTIFF in the above styled and numbered
cause, which was filed on APRIL 1, 2010 in the 419TH JUDICIAL DISTRICT COURT of Travis County,
Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, April 02, 2010.

REQUESTED BY:
JOHN M STEVENSON
P.O. BOX 2452
AUSTIN, TEXAS 78768

DELIVERED THIS ___ DAY OF _April_ 20_10_

BRUCE ELFANT
CONSTABLE, PREC. 5, TRAVIS COUNTY, TEXAS

BY _____

      DEPUTY

AMALIA RODRIGUEZ-MENDOZA
Travis County District Clerk
Travis County Courthouse
1000 Guadalupe, P.O. Box 679003 (78767)
Austin, Texas 78701

By _Miriam Caldera_
MIRIAM CALDERON, Deputy

- - - - - - - R E T U R N - - - - - - - - -

Came to hand on the ___ day of _____, ___ at ___ o'clock ___ M., and executed at
_____ within the County of _____ on the
___ day of _____, ___, at ___ o'clock ___ M., by delivering to the within named
_____, each in
person, a true copy of this citation together with the E-FILE MANDATE NOTICE accompanying pleading, having first
attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of
delivery.

Bruce Elfant
Constable Pct. 5, Travis County, Texas

Service Fee: $ _____

Sworn to and subscribed before me this the

____ day of _____, _____.

Sheriff / Constable / Authorized Person

By: _____

Printed Name of Server

_____
Notary Public, THE STATE OF TEXAS

_____ County, Texas

D-1-GN-10-001032

☐ Original ☐ Service Copy

CONSTABLE

PAUPER'S OATH

D01 - 47277

**EXHIBIT D**

C I T A T I O N

T H E   S T A T E   O F   T E X A S

**CAUSE NO. D-1-GN-10-001032**

615*

JOHN M. STEVENSON
                                                                    , Plaintiff

vs.

AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; DR. JEFFREY JOSEPHS, INDIVIDUALLY AND
AS AN EMPLOYEE OF THE AUSTIN-TRAVIS COUNTY INTEGRAL CARE CENTER; **PLEASE SEE    , Defendant
PETITION FOR ADDITIONAL PARTIES**

TO:  SYLVIA BLANCO
     P.O. BOX 6159 (1124 SOUTH IH 35)
     AUSTIN, TEXAS 78762-6159

Defendant, in the above styled and numbered cause:

**YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not file a written
answer with the clerk who issued this citation by 10:00 A.M. on the Monday next following the
expiration of twenty days after you were served this citation and petition, a default judgment may
be taken against you.**

Attached is a copy of the ORIGINAL PETITION of the PLAINTIFF in the above styled and numbered
cause, which was filed on APRIL 1, 2010 in the 419TH JUDICIAL DISTRICT COURT of Travis County,
Austin, Texas.

ISSUED AND GIVEN UNDER MY HAND AND SEAL of said Court at office, April 02, 2010.

REQUESTED BY:                              AMALIA RODRIGUEZ-MENDOZA
JOHN M STEVENSON                           Travis County District Clerk
P.O. BOX 2452                              Travis County Courthouse
AUSTIN, TEXAS 78768                        1000 Guadalupe, P.O. Box 679003 (78767)
                                           Austin, Texas 78701

DELIVERED this  5  DAY OF April   20 1D        By  Miriam Calderon
              BRUCE ELFANT                        MIRIAM CALDERON, Deputy
CONSTABLE, PREC. 5, TRAVIS COUNTY, TEXAS

BY _____
            DEPUTY        -- -- -- -- R E T U R N -- -- -- -- -- -- -- -- -- --

Came to hand on the ____ day of _____, at _____ o'clock ____ M., and executed at
_____ within the County of _____ on the
____ day of _____, _____, at _____ o'clock ____M., by delivering to the within named
_____, each in

person, a true copy of this citation together with the E-FILE MANDATE NOTICE accompanying pleading, having first

attached such copy of such citation to such copy of pleading and endorsed on such copy of citation the date of

delivery.
                                            Bruce Elfant
                                            Constable Pct. 5, Travis County, Texas

     Service Fee: $ _____                 _____
                                            Sheriff / Constable / Authorized Person
     Sworn to and subscribed before me this the
                                            By: _____
     ____ day of _____, _____.
                                            Printed Name of Server

_____                        _____ County, Texas
Notary Public, THE STATE OF TEXAS

D-1-GN-10-001032                  CONSTABLE                       D01 - 47278
  ☐ Original   ☑ Service Copy

**PAUPER'S OATH**

# EXHIBIT E

Cause No. _D-1-GN-10-001032_

**JOHN M. STEVENSON**
    **Plaintiff**

**IN THE DISTRICT COURT**

Filed in The District Court
of Travis County, Texas
APR 01 2010
At _____ P.M.
Amalia Rodriguez-Mendoza, Clerk

**VS.**

**JUDICIAL DISTRICT**

**Austin-Travis County Integral
Care Center [formerly the Austin-
Travis County Mental Health and
Mental Retardation Center]; Dr.
Jeffery Josephs, Individually and
as an Employee of the Austin-Travis
County Integral Care Center; The
Housing Authority of the City of
Austin [HACA]; Ms. Sylvia Blanco,
Individually and as an Employee
of HACA**
    **Defendants**

**TRAVIS COUNTY, TEXAS**

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

    COMES NOW Plaintiff, John M. Stevenson ("JMS"; "Stevenson"; "Plaintiff") and files

this Original Complaint, jointly and severally, against The Austin-Travis County Integral Care

Center [MHMR]; Dr. Jeffery Josephs, Individually and as an Employee of MHMR; The Housing

Authority of the City of Austin [HACA]; Ms. Sylvia Blanco, Individually and as an Employee of

HACA.

# I

## DISCOVERY TRACK

Pursuant to Tex. R. Civ. P. 190.1, the Plaintiff intends to conduct discovery at Level 3.

# II

## PARTIES

1.     The Plaintiff is a resident of Austin, Travis County, Texas.

2.     The  Austin-Travis County Integral Care Center is a community entity and may be served with process by serving its General Counsel, Ms. Lisa Ott Laky, at 1430 Collier Street; Austin, Texas 78704.

4.     Dr. Jeffery Josephs is an individual person and may be served at 1631-D East 2nd Street; Austin, Texas 78702.

5.     The Housing Authority of the City of Austin [HACA] is a public agency and may be served with process by serving its President and CEO, Mr. James L. Hargrove, at P.O. Box 6159 [1124 South IH 35]; Austin, Texas 78762-6159.

6.     Ms. Sylvia Blanco is an individual person and may be served at HACA; P.O. Box 6159 [1124 South IH 35]; Austin, Texas 78762-6159.

# III

## VENUE

7.     Venue is proper in Travis County, Texas. All the events that give rise to the claims set forth herein took place in Travis County, Texas.

# IV

## FACTUAL BACKGROUND

8.     Plaintiff brings this suit INITIALLY to recover for damages caused and continuing to be caused by Defendants, jointly and severally, for their conspiracy to violate, and actual violation

- 2 -

of, Plaintiff's U.S. Constitutional, Texas Constitutional, Federal and State Statute guaranteed

rights to Privacy; for their conspiracy to discriminate against, and actual discrimination against,

Plaintiff in violation of his U.S. Constitutional, Texas Constitutional, Federal and State Statute

guaranteed rights; for their conspiracy to violate, and actual violation of, Plaintiff's U.S.

Constitutional, Texas Constitutional, Federal [HUD and other] and State Statute guaranteed

rights to due process; deprivation of property and property interests. In addition, Defendants

perpetrated intentional infliction of emotional distress; medical malpractice; wrongful eviction;

tortious interference with doctor/patient relationship; tortious interference with contract; breach

of contract and other malicious actions that defendants have taken and are continuing to take

against Plaintiff.

9.      Plaintiff is a 66 year old individual who is a recovering alcoholic and has been sober and

in a recovery program since March 1985. It is an established fact that one's addiction to alcohol

is ". . . an outward symptom of a much more serious underlying illness." In the case of Plaintiff,

his underlying illness as diagnosed by several psychiatrists is "severe clinical depression."

Plaintiff's depression is so severe he has been determined to be disabled by the State of Texas

and has been so classified. It should be noted that continued sobriety and relief from the severe

clinical depression is absolutely essential to the maintaining of Plaintiff's wellbeing. The

endangerment of his sobriety by Defendants has caused Plaintiff severe emotional and mental

problems and damages.

10.     Plaintiff has received treatment for his severe depression since the late 1980's, early

1990's. Said treatment has been almost totally by and through MHMR. Plaintiff's sobriety is an

integral part of his MHMR administered medical treatment program.

11.     In mid-late 2002, Plaintiff moved to Austin, Texas. He immediately went to MHMR to

continue treatment from them for his mental illness. Plaintiff was either initially or soon

thereafter assigned to Dr. Tiffany Ballard as his treating psychiatrist. Plaintiff was prescribed various medications, provided some counseling and was directed to pursue a prevention oriented program of exercise and the taking of various health enhancing supplements.

12.      In or about early 2005, Dr. Ballard left MHMR. A Dr. Jeffery Josephs was subsequently assigned as Plaintiff's treating physician. Even though he somewhat changed which drugs were prescribed, Dr. Josephs continued to prescribe various drugs for Plaintiff's treatment program. He also prescribed counseling. In addition, Dr. Josephs and Plaintiff discussed on numerous occasions the fact that both strongly believed in illness prevention oriented medical treatment programs that included exercise programs, the taking of various health enhancing supplements and, if possible, the ownership and enjoyment of a dog/service animal. Therefore, Dr. Josephs specifically directed Plaintiff to engage in an exercise program and to take various nutritional supplements. Even though Dr. Josephs strongly felt that it would be a significant boon to Plaintiff's medical treatment program, it was not possible for Plaintiff to have a dog/service animal at that time.

13.      In or about October 2005, Plaintiff moved into a Housing Authority of the City of Austin [HACA] housing project—the Gaston Place Apartments at 1941 Gaston Place # 107; 78723.

14.      As part of the HACA procedure for residency, the monthly rental amount is a percentage of a tenant's effective annual income as per HUD regulations and requirements. Since this effective income amount could change over a period of time, HACA recalculated a tenant's effective annual income and resulting monthly rental amount annually.

15.      When calculating a tenant's effective annual income, all out-of –pocket amounts that a tenant paid for items that were prescribed as part of the tenant's medical treatment program could be deducted as expenses from gross income. If they are prescribed, this includes the cost of

- 4 -

health club memberships and/or prevention oriented supplements and/or the cost of acquiring and maintaining service animals.

16.     Plaintiff was notified in the summer of 2006 that it was necessary to re-calculate his effective annual income and, therefore, monthly rental amount for the October 2006-September 2007 period. In order to receive credit for the out-of-pocket cost of his health club membership, Plaintiff requested that Dr. Josephs provide him a written prescription for Dr. Josephs' earlier directions to engage in an exercise program as part of Plaintiff's medical treatment program. Dr. Josephs prescribed that Plaintiff was ". . . to use the services of a health club or gymnasium to maintain his state of mental and physical health, to reduce stress and increase alertness." Due to this prescription [Exhibit "A"], Plaintiff was able to deduct this expense and his resulting monthly rental amount was, therefore, significantly lower. Since this item was an ongoing part of Plaintiff's medical treatment program, the prescription was open-ended; did not expire.

17.     In late 2007 or early 2008—Plaintiff was prescribed by Dr. Josephs to obtain and enjoy a small dog [service animal] as part of Plaintiff's medical treatment program that was being administered by MHMR. Plaintiff obtained a dachshund [Brewster].

18.     Soon after obtaining Brewster, Plaintiff, by letter directed to Sylvia Blanco, asked if HACA would allow a small area at the Gaston apartments to be set aside and fenced with a small temporary fence for tenants who had been prescribed dogs/service animals as part of their medical treatment programs. The intent—which was made clear to Defendant Blanco—was for these owners to be able to unleash their pets, congregate and enjoy both visiting with their friends and being able to play with [enjoy] their dogs/service animals. As was also made clear to Ms. Blanco, a substantial reason for this fenced area was to enable handicapped dog/service animal owning tenants to enjoy and exercise their dogs/service animals—as had been prescribed as part of their medical treatment programs.

- 5 -

19.     In addition to enjoying their pets, there is no question that the visiting and camaraderie with other dog owning tenants would be medically beneficial to all of said tenants.

20.     Very much to the surprise of Plaintiff, Ms Blanco responded with an arrogant, condescending letter to Plaintiff; in said letter, Ms. Blanco was extremely hostile toward Plaintiff. She not only would not allow the facility, she emphasized that the facility was ". . . not in line with the HACA objective." To a very real extent she attacked Plaintiff for making such a request. This event clearly signifies the hostility that Defendant Blanco had toward Plaintiff; and in general, toward other dog/service animal owning tenants.

21.     At this point, hostility by Ms. Blanco toward Plaintiff started to build. When Plaintiff requested that she clarify how such a facility was ". . . not in line with the HACA objective." she refused to respond. However, she did instruct the manager of the Gaston Place Apartments to effectuate and pursue a harassment oriented campaign against the dog/service animal owning tenants—particularly Plaintiff.

22.     Subsequent to said letter, Ms. Debbie Del Rio as manager of Gaston Place started harassing plaintiff and other service animal/dog owners. Even though plaintiff and other of said tenants were not violating the rules, Ms. Del Rio and Ms Blanco had the police, the sheriff's office and the City of Austin Animal Control harass them—particularly Plaintiff. Due to pressure from HACA, an Animal Control officer actually gave Plaintiff a ticket for various dogs/service animals not having vaccinations when HACA's files showed that all said dogs/service animals (3) were current on all required vaccinations. In addition, all 3 dogs were wearing tags that showed them to be current on required vaccinations. It is of interest that two of said dogs/service animals did not even belong to Plaintiff—and the animal control officer was aware of this. Clearly her intent was to harass Plaintiff as per Defendant Blanco's direct and/or indirect instructions.

- 6 -

23.    There is no question that the entire service animal/dog incident exemplifies the extreme and increasing hostility that Ms. Blanco had, and has, toward Plaintiff.

24.    In the summer of 2007, Plaintiff was notified by HACA that it was necessary to re-calculate his effective annual income and, therefore, monthly rental amount for the October 2007 to November 2008 time period. Since Dr. Josephs and Plaintiff had agreed as to which supplements he should be taking, Plaintiff asked Dr. Josephs for a prescription that verified that these prevention oriented supplements from the Nikken Company were a necessary part of Plaintiff's medical treatment program. Dr. Josephs provided Plaintiff with such a prescription [Exhibit "B"]; and, in said prescription, clarified that these supplements were a "medical necessity." Since these items too were an ongoing part of Plaintiff's medical treatment program, the prescription was open-ended; did not expire. Since the earlier prescription for the health club membership was ongoing, it was not required that Plaintiff get a new prescription in subsequent years.

25.    In the calculation of Plaintiff's effective annual income for the October 2007 to November 2008 time period, both the cost of the health club and the cost of the supplements were deducted from gross income. This lower effective annual income resulted in Plaintiff's monthly rental amount to be even more substantially lower.

26.    In the summer of 2008, Plaintiff was notified that it was necessary to calculate his effective annual income for the October 2008 to November 2009 time period. Plaintiff submitted both the health club prescription and prevention oriented supplement prescription as items that were being paid for out-of-pocket and should, therefore, be deducted from his gross income in the calculation of his effective annual income.

27.    Initially, HACA refused to give Plaintiff credit for either of these prescribed out-of-pocket expenses in the calculation of his effective annual income. After Plaintiff challenged

- 7 -

HACA on this matter, they agreed to allow the deduction for the health club membership but not for the prescribed supplements even though both prescriptions did not expire. HACA provided no explanation for their decision and this breach of Plaintiff's due process rights as set forth in HUD's rules and regulations.

28.     Even though HACA was not following the HUD requirements, Plaintiff continued to protest HACA's not giving him credit for the prescribed supplements. As part of his protest, Plaintiff refused to pay the incorrect rent amount that did not give him credit for the cost of the prescribed supplements. Plaintiff did, however, offer to pay the amount that was correct as per his calculations since it allowed for the cost of the prescribed supplements. This offer to pay the correct amount as per Plaintiff's calculations was in compliance with applicable state statute and precedent for the amount that was to be paid while the eviction lawsuit was in progress. If Plaintiff so paid, he supposedly could not be evicted for not paying rent.  HACA refused to accept the amount offered by Plaintiff and maliciously proceeded with eviction proceedings wrongfully and fraudulently based on Plaintiff's not paying rent.

29.     It was at this point that Plaintiff determined that this was not just a dispute as to monthly rental amount. This was a scheme. It seems that HACA is very much against giving tenants credit for any out-of-pocket expenses that result from prevention oriented medical treatment programs [i.e. exercise programs, nutritional supplements and the ownership and enjoyment of dogs/service animals]. In order to prevent a tenant's correctly deducting these actual out-of-pocket prevention oriented medical expenses, HACA aggressively pursues a rather elaborate illegal scheme and was able to get Dr. Josephs to cooperate with and participate in the pursuing of said scheme.

30.     As part of their scheme to prevent Plaintiff from receiving credit for said medical expenses in the calculation of his effective annual income, Ms. Sylvia Blanco, V.P. of HACA,

- 8 -

other HACA employees and an attorney representing HACA [herein collectively referred to as

HACA, et al] contacted Dr. Jeffery Josephs and other MHMR personnel who were involved in

treating Plaintiff. HACA, et al represented that they had a release from Plaintiff that waived his

Doctor-Patient confidentiality and gave them the right to contact MHMR and discuss Plaintiff's

medical-healthcare situation.  HACA did not have any such release and knew they did not have

any such release. Therefore, their actions were clearly malicious and in violation of HIPAA, the

Privacy Rule, the U.S. and Texas Constitutions, the Texas Health and Safety Code Section

611.02, the Texas Medical Practice Act and various other federal and state statutes and common

law.

31.     There were extensive communications between HACA and Dr. Josephs, and a conspiracy

was entered into between them to wrongfully evict Plaintiff from his Gaston Place residence. As

part of his contribution to said conspiracy, Dr. Josephs was to fraudulently testify at the eviction

trial that he never wrote any prescriptions for Plaintiff for nutritional supplements; an exercise

program; the ownership and enjoyment of a dog/service animal. Even though this was knowingly

perjured testimony, Dr. Josephs agreed to—and eventually did—give said fraudulent testimony

at the wrongful eviction trial. In addition, Defendant Josephs advised HACA as to what tactics,

actions HACA could take that would aggravate Plaintiff's severe clinical depression and make it

much more difficult for Plaintiff to defend himself. These tactics by Defendants HACA, Blanco,

MHMR and Josephs were extremely damaging to Plaintiff's wellbeing.

32.     MHMR and Dr. Josephs were well aware that they did not have any release and they

must have a release from Plaintiff before they could even remotely discuss Plaintiff's

confidential medical-health situation with HACA and/or any other 3rd party. Even though it was

clearly shown on the MHMR computer files that they did not have any type of release from

Plaintiff, it is an absolute fact that, during October-November 2008 Dr. Jeffery Josephs of

MHMR talked with Ms. Blanco of HACA extensively and specifically discussed in detail Plaintiff's personal health information that is confidential by law. Their doing so was a knowing, intentional illegal violation of Plaintiff's rights pursuant to the Health Insurance Portability and Accountability Act [HIPAA] and the resulting Privacy Rule [45 CFR et seq], the U.S. and Texas Constitutions, the Texas Health and Safety Code Section 611.02, the Texas Medical Practice Act and other federal and state statutes and common law.

33.     As a further violation of HIPAA, the Privacy Rule, the Texas Health and Safety Code Section 611.02, the Medical Practice Act and others, Dr. Josephs on November 24, 2008 faxed to Sylvia Blanco an "Informational Progress Note" ["IPN"] that specifically verifies their discussions; discloses confidential health information on Plaintiff; wrongfully denies that Dr. Josephs ever wrote prescriptions for the supplements, the health-club membership and/or the ownership and enjoyment of a dog/service animal.

34.     Once HACA had Dr. Josephs' IPN in hand and arrangements had been made for him to give perjured testimony, HACA filed an eviction lawsuit against Plaintiff in the Justice of the Peace Court; Precinct 1; Travis County, Texas; Judge Richard E. Scott on December 3, 2008. Even with this suit filed and Dr. Josephs' IPN and agreement to cooperate in hand, HACA, et al continued to contact MHMR personnel and request Plaintiff's confidential healthcare information and to fraudulently represent that they had a release from Plaintiff.

35.     In December 2009, Defendant Blanco notified Plaintiff that HACA intended to deprive him of his HUD required due process rights because he had requested a jury trial.

36.     On February 19, 2009, a jury trial was commenced on HACA's eviction lawsuit [herein sometimes referred to as "JP Court Trial"]. The first witness for HACA was Dr. Jeffery Josephs of MHMR. Dr. Josephs was accompanied by an attorney, Ms. Lisa Ott Laky, who represented that she was general counsel for MHMR. Ms. Laky brought to the Court's attention that Dr.

- 10 -

Josephs could not testify without either the Court's ordering him to do so or Plaintiff's agreeing

to allow him to do so. Ms. Laky presented copies of the federal statute that so stated. Obviously

MHMR knew a release [or court order] from Plaintiff was needed and knew that they did not

have such release.

37.     The Court ordered Dr. Josephs to testify and Plaintiff, expecting Dr. Josephs to be

truthful, gave his permission.

38.     When Dr. Josephs took the stand, he specifically verified that he had discussed Plaintiff's

confidential personal medical-health information without Plaintiff's written [or oral] permission

at length with Ms. Blanco and possibly others at HACA.

39.     During the questioning of Dr. Josephs, the IPN was introduced into evidence. Dr. Josephs

verified that he had written and sent it. This was the first time that Plaintiff had any knowledge

whatsoever that said IPN existed. It was also the first time that Plaintiff became aware that Dr.

Josephs had without authorization maliciously discussed Plaintiff's confidential personal health

information with Ms. Blanco at HACA.

40.     When Plaintiff challenged him as to the false statement in the IPN that he had not written

any prescriptions for the supplements and/or exercise program and/or dog/service animal, Dr.

Josephs' lied under oath and said that he never wrote any such prescriptions. When questioned

by Plaintiff, he specifically denied that he wrote the prescriptions attached hereto as Exhibits "A"

and "B".

41.     Judge Scott refused to allow Plaintiff to enter the prescriptions [Exhibit "A" and "B"]

into evidence and question Dr. Josephs as to his false testimony.

        When the case went to the jury, the jury, after substantial consideration, asked Judge

Scott if they could make the decision and add specific conditions. After conferring with both

Plaintiff and the attorney for HACA, Arthur Troilo, Judge Scott informed the jury that they could include said conditions in their ruling.

42.     Due substantially to Dr. Josephs' false testimony and the conditions that Judge Scott informed them as being acceptable, the jury ruled against Plaintiff; in favor of HACA; however, they included extensive conditions that were to Plaintiff's benefit that were in compliance with Judge Scott's instructions. The order was prepared by Mr. Troilo. Plaintiff objected to the order because the conditions the jury required were omitted; and basically, the order was a plain vanilla eviction order.

43.     Judge Scott signed said order; however, due to Plaintiff's objections he made a notation on the order that stated basically that the conditions that were a part of the jury's decision could not be entered on the order because a forcible entry and detainer [eviction] lawsuit did not allow for such. In effect, Judge Scott and Mr. Troilo defrauded the jury; and therefore, denied Plaintiff his due process rights. Had said conditions been included in said order, as the jury had ruled, HACA would not have been able to maliciously proceed with wrongful eviction.

44.     Plaintiff appealed said decision to county court. Mr. Troilo then wrongfully, maliciously, fraudulently represented to both county court judges that HACA had a valid eviction order. HACA then maliciously proceeded to evict Plaintiff from his Gaston Place residence. Said eviction was done in an extremely malicious and damaging manner. Even though Plaintiff did not receive proper notice, the Constable appeared at his door at approximately 10:00 AM; and in effect, threw Plaintiff and his belongings ". . . into the street." During said malicious eviction, HACA's personnel stole various irreplaceable files [some specifically on the HACA matter]; a very expensive hearing aid and other property from Plaintiff.

45.     In this wrongful eviction incident, both HACA and Judge Scott are guilty of fraud and of the denial of Plaintiff's rights to due process.

46.    Subsequent to the determination at the JP Court Trial that Dr. Josephs and MHMR had

breached the Plaintiff's doctor-patient confidentiality and the fraudulent testimony of Defendant

Blanco, Plaintiff was emotionally, mentally devastated and was becoming more so. It has since

been determined that said fraudulent testimony at the JP Court trial is what is know as a "trigger

event." This trigger event led to Plaintiff's having a severe relapse into the symptoms of his

mental affliction of severe clinical depression—as was intended by all Defendants.

47.    Since he felt he had no other avenue to receive treatment for his now severely aggravated

severe clinical depression, Plaintiff had no choice but to continue his treatment at MHMR.

Therefore, Plaintiff requested that he be assigned to a different psychiatrist. After much hassle,

Plaintiff was assigned to a Dr. Khan. Plaintiff further requested that MHMR provide him some

type of therapeutic counseling due to the severe mental, emotional damages that Dr. Josephs' and

MHMR's behavior had caused Plaintiff. MHMR maliciously refused to do so. Even though

Plaintiff's deteriorating mental health was due to illegal acts by MHMR, Dr. Josephs, HACA

Ms. Blanco all showed absolute deliberate indifference toward Plaintiff's plight.


**42 U.S.C. Section 1983 Claims and Violations of the Texas Constitution:**

48.    Defendants HACA's and  Blanco's [as well as Judge Scott's] malicious actions to

defraud the jury and Plaintiff as to what could be included in the jury's decision; and therefore,

subsequent order, constitutes a violation of Plaintiff's due process rights pursuant to the 14th

amendment of the U.S. constitution[1983 claim] and to the applicable provisions of the Texas

Constitution. Defendants Blanco and HACA and Judge Scott's effectuation of an order that did

not contain the conditions set forth by the jury and Defendant Blanco's and Defendant Josephs'

lying under oath at said trial further constitutes a violation of Plaintiff's due process rights [1983

Claim]. Defendants' use of said fraudulent order to maliciously effectuate the wrongful eviction

and discrimination against Plaintiff [and others with mental afflictions] constitutes an even further violation of Plaintiff's due process rights [1983 Claim].

49.     Defendants Josephs and MHMR's conspiring with Defendants Blanco and HACA to specifically aggravate Plaintiff's illness of severe clinical depression [and so doing] so that Plaintiff could not properly defend himself at said JP trial, subsequent trials and other actions to avoid eviction constitutes a further violation of Plaintiff's due process rights [1983 Claim].

50.     By knowingly, intentionally, maliciously disclosing Plaintiff's confidential medical information to Defendant, Defendants Josephs and MHMR did in fact violate Plaintiff's rights to privacy as provided by the 1st-5th-14th amendment of the U.S. Constitution [1983 Claim] and as set forth in applicable provisions of the Texas Constitution.

51.     By their knowingly, intentionally, maliciously discriminating against Plaintiff in order to aggravate Plaintiff's severe clinical depression and deny him a proper residence, domicile the Defendants collectively violated Plaintiff's Title VII rights and prohibitions against housing discrimination [1983 Claim] and the Texas Property Code. These actions by Defendants were clearly discrimination against those with mental afflictions; in Plaintiff's instance, severe clinical depression.

52.     When Defendants Blanco and HACA effectuated a wrongful eviction against Plaintiff, they did in fact steal several of Plaintiff's files—particularly some pertaining to the HACA/Blanco/MHMR/Josephs matter; a hearing aid that belonged to Plaintiff that can not be easily, feasibly replaced; other items [1983 Claim]. This is a violation of the due process clause of the 14th amendment and applicable provisions of the Texas Constitution in that it deprives Plaintiff of his property interests in personal property without due process.

53.     When Defendants Blanco and HACA maliciously effectuated the wrongful eviction of Plaintiff, they denied him his right to tenancy. The right to tenancy is a property and their

- 14 -

wrongful taking of this property without due process is a violation of Plaintiff's U.S.

Constitutional [1983 Claim] and Texas Constitutional rights.

54.     When Defendants Blanco and HACA effectuated a wrongful eviction against Plaintiff,

they did establish on his record that he had been evicted; by their maliciously doing so, they, in

effect, severely blemished Plaintiff's rent history and credit rating and made it impossible for

Plaintiff to conduct his part-time business. This is the taking of personal property on a similar

basis to the fact that the wrongful blemishing of a personal work history is the taking of a

person's property. A person's rental history and/or credit record is in fact such a property [1983

Claim].

55.     The medical malpractice and wrongful, malicious disclosure of confidential medical

information by Defendants Josephs and MHMR and the receipt of same by Defendants Blanco

and HACA constitute the taking of personal property without due process. A person's medical

history is in fact a property and the malicious blemishing and/or disclosure thereof is the taking

of personal property without due process [1983 Claim].

56.     In all these taking of property instances, and others to be addressed, Plaintiff has been

deprived of property and property interests without due process as is protected under the U.S.

Constitution and federal statutes [1983 Claim].

57.     By Defendants MHMR and Josephs wrongful disclosure of Plaintiff's medical history

and Defendants Blanco and HACA's acceptance of a written summary thereof, they are in

violation of the U.S. Constitution, the Health Insurance Portability and Accountability Act

[HIPAA], the Federal Privacy Rule [45 CFR, et seq]; and other federal laws [1983 Claim], the

Texas Constitution and state statutes.


**IMMUNITY:**

- 15 -

58.     Defendant Blanco and Defendant Josephs are not individually immune from civil liability under the defense of official immunity because some of the challenged actions of both, individually and/or collectively, [1] were not within the scope of their authority, [2] were not in the performance of discretionary duties, [3] were not taken in good faith.

59.     In addition, sovereign immunity does not shield an individual that is being sued in his individual capacity from liability.

60.     Neither HACA nor MHMR are entitled to governmental immunity. Their policy and rules resulted in malicious actions that were damaging to Plaintiff by violating his due process rights and privacy rights as granted and protected by the U.S. Constitution and various federal laws. These damaging actions are, in fact, Section 1983 claims. Therefore, immunity is not available to HACA and MHMR.

61.     All of said HACA, MHMR actions were taken pursuant to rules and policies of these entities; were taken maliciously and most, if not all, were in violation of the Texas Constitution and various state statutes [laws]. Therefore, immunity is not available to HACA and MHMR.


**MEDICAL MALPRACTICE:**

62.     Dr. Josephs and MHMR have admitted to wrongfully disclosing without proper authorization confidential information as to plaintiff's medical treatment program to HACA and Defendant Blanco. This disclosure is without question not in compliance with a mode or form of treatment that reasonable and prudent members of the medical profession would have performed in the same and/or similar circumstances. Said treatment, therefore, constitutes medical malpractice.

63.    Even though a single act or course of treatment is adequate to establish malpractice,

Plaintiff has grounds for belief that other acts that constitute malpractice exist. These acts will be

expressed in more detail at the appropriate time.

64.    As a direct and proximate result of the Defendants' knowing, intentional, malicious

actions and misconduct, Plaintiff was caused, and is continuing to suffer, severe emotional and

mental anguish, physical afflictions and other irreparable damages.


**BREACH OF PHYSICIAN-PATIENT PRIVILEGE:**

65.    In the herein described situation, Dr. Josephs and MHMR did knowingly and

intentionally disclose without proper authorization Plaintiff's confidential-privileged information

in breach of the physician-patient privilege. It will be shown that Dr. Josephs, possibly MHMR,

received compensation from HACA and Defendant Blanco for wrongfully providing them this

confidential-privileged information. In addition, it will be shown that Defendant Josephs was

aware that this information was to be used for their benefit by HACA and Defendant Blanco in

an existing dispute with Plaintiff.

66.    These acts not only constitute a breach of Plaintiff's Physician-Patient Privilege, they

constitute a violation of HIPAA, the HIPAA Privacy Rule, The Texas Health and Safety Code

Section 611.02, The Texas Medical Practice Act.

67.    As a direct and proximate result of the Defendants' knowing, intentional, malicious

actions and misconduct, Plaintiff was caused, and is continuing to suffer, severe emotional and

mental anguish, physical afflictions and other irreparable damages.


**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

68.     The aforesaid conduct of the Defendants has caused directly and proximately Plaintiff to

suffer severe emotional distress. Since Defendants were well aware that their conduct would

cause Plaintiff severe emotional distress, their actions were clearly calculated to intentionally

inflict emotional distress upon Plaintiff. The Defendants' actions were intentional, reckless and

their conduct was extreme and outrageous.

69.     The Defendants acted with deliberate indifference to Plaintiff's federal and state

protected constitutional and statutory rights in their herein set forth malicious misconduct. The

Defendants' actions in doing this were intentional, reckless and their conduct was extreme,

outrageous and beyond the bounds of civilized behavior. They chose to knowingly violate a

principle that is the very basis for a civilized medical system. If the patient is deprived of his

right to doctor-patient confidentiality, our nation's medical system will perish.

70.     The Defendants' conduct constitutes intentional infliction of emotional distress. As a

direct and proximate result of the Defendants' knowing, intentional, malicious actions and

misconduct, Plaintiff was caused, and is continuing to suffer, severe emotional and mental

distress, physical afflictions and other irreparable damages.


**INVASION OF PRIVACY BY WAY OF DISCLOSURE:**

71.     The actions of all Defendants constitute a breach of Plaintiff's privacy rights by

disclosure. The Defendants denied Plaintiff his right to determine for himself when, how and to

what extent privileged and confidential information about him is communicated to others. The

Defendants' collective actions constitute an unwarranted invasion of Plaintiff's constitutional

and statutorial right of privacy and constitute a legal injury for which remedy should be granted.

72.    Due to this knowing, intentional, malicious action and misconduct by Defendant, Plaintiff was caused, and is continuing to suffer, severe emotional and mental anguish, physical afflictions and other irreparable damages.

## BREACH OF CONTRACT; TORTIOUS INTERFERENCE WITH CONTRACT:

73.    The physician-patient relationship is contractual and totally voluntary. One of the provisions of Plaintiff's contract with MHMR and Dr. Josephs is that they would exercise that degree of care that a practitioner of ordinary prudence and skill would have exercised in the same or similar circumstances. Said Defendants' disclosing of confidential information, receipt of same confidential information and/or communications with patient in breach of Plaintiff's physician-patient privilege most certainly does not comply with this provision; and, therefore, constitutes a breach of said contract—And tortious interference with contract.

74.    As a result of this knowing, intentional breach of contract and tortious interference by Defendants, Plaintiff was caused, and is continuing to suffer, severe emotional and mental anguish, physical afflictions and other irreparable damages.

## BREACH OF FIDUCIARY DUTY:

75.    It has been determined that the Doctor-Patient Relationship puts the Doctor in the position of being a fiduciary. The Doctor, therefore, owes the patient the duties of good faith, trust, confidence and candor.

76.    Dr. Josephs and MHMR's violation of Plaintiff's non-disclosure and confidentiality rights clearly constitutes a breach of the fiduciary duty they owed Plaintiff. This breach of the fiduciary rights they owed to Plaintiff has caused Plaintiff severe and irreparable harm.

### RESPONDEAT SUPERIOR

77.     Apparently at some relevant times herein addressed, Defendant Dr. Jeffery Josephs was acting on behalf of MHMR; within the scope and course of his employment or official duties with MHMR. Some of his actions were in furtherance of the duties of his office and employment with MHMR. Therefore, virtually all actions of Dr. Jeffery Josephs are attributable to MHMR and render MHMR liable for all damages suffered by Plaintiff under RESPONDEAT SUPERIOR.

78.     Apparently at some relevant times herein addressed, Defendant Ms. Sylvia Blanco was acting on behalf of HACA; within the scope and course of her employment or official duties with HACA. Some of her actions were in furtherance of the duties of her office and employment with HACA. Therefore, some actions of Ms. Sylvia Blanco are attributable to HACA and render HACA liable for all damages suffered by Plaintiff under RESPONDEAT SUPERIOR.


**DAMAGES:**

**Compensatory Damages**

79.     As a direct and proximate result of the acts of the Defendants, the Plaintiff has been damaged in a sum exceeding $500,000 which is in excess of the minimum jurisdictional limits of this court. Plaintiff has suffered severe personal injuries which include physical pain, mental anguish, mental afflictions and physical afflictions. Due to the nature and severity of these injuries Plaintiff will, with reasonable probability, continue to suffer from these injuries for the rest of his life.

**Punitive; Exemplary Damages**

80.     Defendants' conduct herein complained of and made the basis of this suit was knowing, intentional, willful, malicious, oppressive, wanton, callous and deliberately indifferent to Plaintiff's rights and the rights of the public in general. If this behavior is allowed to continue, it

- 20 -

will have a devastatingly negative effect on future actual and prospective patients. The very existence of this type of behavior will have a negative effect on our nation's medical system and the public in general.

81.    Therefore, Plaintiff is entitled to recover punitive damages. These damages should be in an amount that is substantial enough to make a public spectacle of Defendants. It should be absolutely clear to the Defendants, other potential wrongdoers in the medical community and the public in general *that such conduct will not be tolerated.*

82.    In addition, it is hereby requested that this court issue an injunction that prohibits Defendants from continuing to engage in the type of behavior addressed herein and sanctions them severely should they choose to violate said injunction.

## JURY DEMAND

83.    The Plaintiff demands a trial by jury on all issues in this case.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that Defendants be cited to appear and answer and that upon final hearing, the Court award the Plaintiff the following:

1.  Judgment against Defendants, Jointly and Severally, for actual damages in an amount exceeding $500,000;

2.  Judgment against Defendants, Jointly and Severally, for punitive damages in an amount adequate to prevent Defendants from engaging in the same and/or similar behavior; and adequate to clarify to the public in general that *this type of despicable behavior will not be tolerated;*

- 21 -

3.  Issuance by this Court of an injunction, with severe sanctions for non-compliance, that prevents Defendants from continuing to engage in the same, and/or similar, behavior as is addressed herein;

4.  All costs of court;

5.  Reasonable attorneys for both consultation and representation;

6.  Pre-judgment and post-judgment interest as allowed by law;

7.  Any other relief to which Plaintiff is entitled be it general, in law or in equity.

This Plaintiff's Original Complaint is respectfully submitted on this the _1st_ day of _April_ 2009.

John M. Stevenson, Plaintiff
P.O. Box 2452
Austin, Texas 78768
512-560-0233
Legal.patches@yahoo.com

- 22 -

"A"

**JEFFREY JOSEPHS, M.D.**
1430 COLLIER STREET
AUSTIN, TX 78704-2911

(512) 804-2600

DEA # BJ 2098350

NAME _John Stevenson_ 6/5/1943 AGE

ADDRESS _____ DATE 7/25/2006

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞ John Stevenson has
medical indication to
use the services of a
health club or gymnasium
to maintain his state of
mental and physical health,
to reduce stress, and increase
alertness.

Refill _____ times

☐ Label

_____ M.D.
Signature

A generically equivalent drug product may be dispensed unless the
practitioner hand writes the words 'Brand Necessary' or 'Brand Medically
Necessary' on the face of the prescription.

♻

5DPS1128392

"B"

**JEFFREY JOSEPHS, M.D.**
1430 COLLIER STREET
AUSTIN, TX 78704-2911

(512) 904-3800                    DEA # BJ 2098350        DOB

NAME _John Stevenson_            6/5/1943

ADDRESS _____      DATE 9/18/2007

Rx ILLEGAL IF NOT SAFETY BLUE BACKGROUND

℞ Mr. Stevenson needs the
following as a medical
necessity: Kenzen Ciaga,
Jade Green Zymes, Bio-
directed Joint Com formula,
Bio-directed mental Clarity,
Kenzen Creamy Protein
Shakes. Total cost approx
$200.00 per month.

Refill _____ times

☐ Label

_____ MD
        Signature

A generically equivalent drug product may be dispensed unless the
practitioner hand writes the words 'Brand Necessary' or 'Brand Medically
Necessary' on the face of the prescription.

♻                              5DPS1128392

# EXHIBIT F
**(Will supplement)**